# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-4508

GREGORY V. BROWN, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided December 30, 2019)

*Gregory V. Brown, pro se.*

*James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; *Christopher W. Wallace*, Deputy Chief Counsel; and *Brandon T. Callahan*, all of Washington, D.C., were on the brief for the appellee.

Before BARTLEY, *Chief Judge*, and GREENBERG and MEREDITH, *Judges*.

MEREDITH, *Judge*: The pro se appellant, Gregory V. Brown, appeals an August 8, 2018, Board of Veterans' Appeals (Board) decision that found that the character of his discharge is a bar to benefits. Record (R.) at 3-9. This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). On June 17, 2019, this matter was referred to a panel[1] of the Court to address an issue of first impression, namely whether a discharge that triggers a statutory bar to benefits applies to a veteran's entire period of service. We hold that it does. Accordingly, the Court will affirm the Board's decision.

## I. BACKGROUND

The appellant served on active duty in the U.S. Army from August 10, 1986, to November 16, 1988. R. at 28. In July 1988, he was charged with violating the Uniform Code of Military Justice (UCMJ), *see* R. at 34-40, 581-82, and the record reflects that, on July 27, 1988, he signed a memorandum prepared by the Department of the Army stating that he was voluntarily resigning "for the [g]ood of the [s]ervice," R. at 138. His signature on the memorandum indicated

---

[1] On the same date, the Court stayed proceedings for 30 days to permit possible arrangements for representation of the appellant; however, the appellant remains pro se.

his understanding that his resignation, "if accepted, may be considered as being under other than honorable conditions." R. at 137. His signature further indicated his understanding that, if his resignation was accepted, he would not receive separation pay and would be "barred from all rights, based upon the period of service from which [he would] be separated, under any laws administered by [VA]," except for provisions not relevant here. R. at 138. On September 2, 1988, "[t]he recommendation of the Department of the Army Ad Hoc Review Board that the resignation for the good of the service tendered by" the appellant "be accepted with the issuance of a discharge under other than honorable conditions" was "approved." R. at 618. The appellant's Department of Defense Form DD-214, Certificate of Release or Discharge from Active Duty (DD-214), confirms that on November 16, 1988, he was discharged under other than honorable conditions as a result of "conduct triable by court-martial." R. at 28. At the time of his discharge, he held the rank of first lieutenant. *Id.*

Shortly after his discharge, the appellant filed with VA a claim for benefits for several disabilities based on injuries sustained in a motorcycle accident on August 23, 1988. R. at 1078-81; *see* R. at 939. He submitted an altered Form DD-214 that indicated that his discharge was "honorable." R. at 1075. Based on that DD-214, a VA regional office (RO) granted his claims for benefits in May 1990. R. at 936-39. He received compensation at a combined 60% rating beginning the day after his discharge from service. *See id.*

On November 20, 1995, the appellant contacted VA to request that his full benefits be resumed after his release from incarceration. R. at 651. A VA employee advised him that there had been a delay because of "conflicting evidence" regarding the character of his discharge. *Id.* At that time, the appellant conceded that his discharge had been under other than honorable conditions. *Id.* VA issued a character of discharge determination in March 1996 finding that his discharge from service under other than honorable conditions constituted a bar to VA benefits. R. at 581-82. Accordingly, VA terminated his benefits effective December 1, 1995. R. at 587.

In September 2004, the appellant asked VA to review and reconsider his case. R. at 428. He asserted that he had been given bad legal advice at the time he signed the memorandum memorializing his intent to resign for the good of the service in that he was told that he "could reasonably expect" an upgrade of his discharge. *Id.* The RO advised him in April 2005 that the character of his discharge barred him from receiving benefits and that he could seek an upgrade of

2

his discharge from the Service Department Discharge Review Board or seek correction of his records through the Service Department Board for Correction of Military Records. R. at 401-03.

In his May 2005 Notice of Disagreement (NOD),[2] the appellant explained that, in the spring of 1988, he was passed over for promotion to captain and was "ordered for honorable discharge pursuant to 10 [U.S.C.] § 3303(d)" not later than August 1, 1988.[3] R. at 393.[4] He further stated that, in July 1988, he was charged with a violation of the UCMJ and agreed, on the advice of an attorney from the Army Judge Advocate General's Corps to resign for the good of the service pursuant to Army Regulation 635-120, chapter 5. *Id.* He contended that the original "discharge authority" was "somehow superseded." *Id.* He then argued that the character of his discharge remained honorable under the authority of section 3303(d) until the Army accepted his resignation for the good of the service in September 1988. *Id.* Accordingly, he asserted that, because his in-service motorcycle accident occurred in August 1988—during what he characterizes as the honorable part of his service—he is entitled to benefits for the disabilities arising from that accident. *Id.*

The appellant testified at an RO hearing in July 2012. R. at 219-31. He offered his account of the events surrounding his resignation and discharge, noting particularly that, at the time of his August 1988 accident, the Army had not yet accepted his resignation. R. at 222. He argued that the terms with which he indicated his agreement in his resignation memorandum—specifically, that he would be barred from benefits "based upon the period of service from which [he was] separated," R. at 138—meant that he was barred from receiving benefits only for the period of service *preceding* the signing of the July 27, 1988, memorandum. R. at 225. He alleged that, but for the Army's decision to hold him over on active duty rather than accept his immediate

---

[2] In November 2005, VA advised the appellant that his NOD was premature because VA had failed to afford him "the opportunity to submit additional evidence." R. at 382. In January 2007, VA advised the appellant that, because he had not responded to the November 2005 letter, VA had to deny his claim. R. at 372. It is unclear from the record and the parties' briefs whether that denial became final or whether the appellant's May 2005 NOD became operative upon the January 2007 decision to deny the claim. In any event, there is no dispute between the parties with respect to the nature of this appeal.

[3] The Court notes that 10 U.S.C. § 3303 was repealed and has been recodified at 10 U.S.C. § 631. Subsection (a) provides, as relevant here, that an Army officer "who holds the grade of first lieutenant and has failed of selection for promotion to the grade of captain for the second time" shall "be discharged on the date requested by him and approved by the Secretary of the military department concerned." 10 U.S.C. § 631(a)(1).

[4] The copy of this document in the record of proceedings appears to be incomplete. *See* U.S. VET. APP. R. 28.1(a)(1)(B) (requiring that the record of proceedings contain "any document from the record before the agency cited in a brief, *in its entirety*" (emphasis added)).

3

resignation, he would not have suffered an in-service injury. *Id.* And, because he remained on active duty beyond the date on which he expressed his understanding that he had forfeited his right to benefits, his August 1988 injuries were subject to compensation. R. at 226.

In February 2013, the RO again determined that the appellant's character of discharge was a bar to benefits. R. at 190-92. The appellant filed an NOD with that decision, reiterating his argument regarding the timing of his resignation with respect to his motorcycle accident, R. at 180-81, and ultimately appealed to the Board, again arguing that his character of discharge did not apply to the period following July 27, 1988, R. at 139.

In the August 2018 decision on appeal, the Board found that, because the appellant was an officer discharged for the good of the service, he was statutorily barred from receiving disability benefits pursuant to 38 U.S.C. § 5303(a) and 38 C.F.R. § 3.12(c). This appeal followed.

## II. ANALYSIS

### A. Parties' Arguments

In an informal brief that the Court construes liberally, *see De Perez v. Derwinski*, 2 Vet.App. 85, 86 (1992), the appellant contends that his single period of service may be bifurcated, with the part during which he sustained the injuries for which he seeks benefits characterized as honorable.[5] Appellant's Informal Brief (Br.) at 1-4. More specifically, he argues that, until his resignation for the good of the service was accepted by the Army on September 2, 1988, his discharge continued to proceed under honorable conditions pursuant to 10 U.S.C. § 631(a)(1). *Id.* at 1. Alternatively, he asserts that the period from which he is barred from benefits ended on July 27, 1988, the day he signed the memorandum indicating his understanding of the effect of his resignation for the good of the service, because there was no reference in the memorandum "to any future period," *id.* at 4, and he could not have contemplated that the discharge under other than honorable conditions would apply to the remainder of his service, *id.* at 2. In either case, he argues, because his motorcycle accident occurred in August 1988—after he signed

---

[5] The Court notes that, although the appellant expressly raised this argument to the Board, R. at 139, the Board did not discuss whether a period of service may be subdivided in this way. Because this is a question of law, however, the Court may address it de novo and, because we conclude that the appellant's discharge is a bar to benefits, the Board's reasons-or-bases error is harmless. *See Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc); *see also* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (holding that the harmless-error analysis applies to the Court's review of Board decisions and that the burden is on the appellant to show that he or she suffered prejudice as a result of VA error).

4

the memorandum and before the Army accepted his resignation—he is entitled to benefits for the resulting injuries. *Id.* at 4. The Secretary argues that the Board's decision is plausible based on the evidence of record, namely the July 1988 memorandum signed by the appellant and his DD-214 showing that he was discharged as a result of conduct triable by court-martial. Secretary's Br. at 5-12. The Secretary further contends that the appellant has not demonstrated that it was error for the Board to rely on the character of his discharge. *See id.* He asks the Court to affirm the Board's decision. *Id.* at 11-12.

B. Law

A Board determination regarding the character of a claimant's discharge is a finding of fact that this Court reviews under the "clearly erroneous" standard of review. *See Struck v. Brown*, 9 Vet.App. 145, 153 (1996). The interpretation of a statute, however, is a question of law that the Court reviews de novo, without deference to the Board's interpretation. *See Butts*, 5 Vet.App. at 539. The statute at issue in this case provides that "[t]he discharge or dismissal . . . of an officer by the acceptance of such officer's resignation for the good of the service . . . shall bar all rights of such person under laws administered by the Secretary based upon the period of service from which discharged or dismissed." 38 U.S.C. § 5303(a); *see* 38 C.F.R. § 3.12(c)(3) (2019).[6]

"When a statute is at issue, we begin with the statutory language." *McGee v. Peake*, 511 F.3d 1352, 1356 (Fed. Cir. 2008); *see Williams v. Taylor*, 529 U.S. 420, 431 (2000). "The statute's plain meaning is derived from its text and its structure." *McGee*, 511 F.3d at 1356; *see Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991) ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute."), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994). The "plain meaning must be given effect unless a 'literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters.'" *Gardner*, 1 Vet.App. at 586-87 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)); *see Roper v. Nicholson*, 20 Vet.App. 173, 180 (2006), *aff'd*, 240 F. App'x 422 (Fed. Cir. 2007). In assessing the language of a statute, courts review the overall statutory scheme "'so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will

---

[6] A resignation for the good of the service will not be considered a bar to benefits where "it is found that the person was insane at the time of committing the offense causing such discharge or release." 38 C.F.R. § 3.12(b). The appellant does not contend that he was insane when he committed the violations of the UCMJ that led to his resignation.

5

not destroy another unless the provision is the result of obvious mistake or error.'" *Roper*, 20 Vet.App. at 178 (quoting SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION, § 46:06 (6th ed. 2000)).

## C. Discussion

The Board found, and there is no dispute, that the appellant was an officer who was discharged for the good of the service. There is also no dispute that the appellant seeks benefits for injuries that occurred during his only period of service. The question for the Court is whether the character of the appellant's discharge, which is a bar to benefits under section 5303(a), may be attributed only to either that part of his service between entry and July 27, 1988, or that part of his service between September 2, 1988, and separation. For our purposes, then, the operative phrase in section 5303(a) is "based upon the period of service from which *discharged or dismissed*." 38 U.S.C. § 5303(a) (emphasis added).

In our view, the statute is clear. Although Congress defined the word "discharge" for some VA purposes, its definition does not apply under the circumstances of this case.[7] We may assume, however, that the word takes on its "'ordinary, contemporary, common meaning,'" which may be derived from general use dictionaries. *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). "Discharge" means "to dismiss or release (someone) from a job, esp[ecially] from service in the armed forces." NEW OXFORD AMERICAN DICTIONARY 494 (3d ed. 2010). In other words, the plain language of the statute means that the inquiry into whether service is disqualifying under section 5303 is not triggered until an individual is "dismiss[ed]" or "release[d]" from military service. That language cannot be read as allowing or requiring an assessment of whether the bar to benefits applies to discrete timeframes within an individual's military service prior to his or her dismissal or release.[8] And, because the

---

[7] In VA's definitional statute, Congress provided:

The term "discharge or release" *includes* (A) retirement from the active military, naval, or air service, and (B) the satisfactory completion of the period of active military, naval, or air service for which a person was obligated at the time of entry into such service in the case of a person who, due to enlistment or reenlistment, was not awarded a discharge or release from such period of service at the time of such completion thereof and who, at such time, would otherwise have been eligible for the award of a discharge or release under conditions other than dishonorable.

38 U.S.C. § 101(18) (emphasis added). The appellant does not contend that he retired or reenlisted.

[8] The Court may take judicial notice of the content of a standard DD-214, which is issued to each service member upon his or her release or discharge from active duty, *see* 10 U.S.C. § 1168(a), and on which VA relies to verify a claimant's eligibility for veterans benefits, *see* 38 C.F.R. § 3.203(a) (2019). *See Monzingo v. Shinseki*, 26 Vet.App. 97, 103 (2012) (per curiam) ("The Court may take judicial notice of facts of universal notoriety that are

bar to benefits applies to "the period of service from which discharged," 38 U.S.C. § 5303(a), it necessarily covers the entire term of military service that ends in the individual's dismissal or release. As a result, whether a discharge for the good of the service is a bar to benefits is determined by the character of discharge assigned at the time the service member is dismissed or released from service. This is so regardless of whether, during the same period of service, the claimant had been pursuing a discharge under a discharge authority that would have resulted in a discharge under honorable conditions, as the appellant has argued is the case here.

In short, where an officer is discharged only once from his or her period of service based on resignation for the good of the service, and no exceptions apply,[9] section 5303(a) operates as a bar to benefits based on *any* part of that period of service.[10] The appellant does not allege that he was released from service more than once, and the Board noted that his service ended in November 1988. R. at 5. His DD-214 confirms that he was discharged on November 16, 1988. R. at 28. Further, the Board found and the appellant's DD-214 reflects that he was a first lieutenant discharged under other than honorable conditions for the good of the service. R. at 6, 28. For these reasons, the Court concludes that the Board did not err in finding his discharge a bar to benefits under section 5303(a). The Court will therefore affirm the Board decision on appeal.

As a final matter, to the extent that the appellant seeks an equitable remedy from the Court —a finding that his character of discharge is not a bar to benefits—although the relief he seeks "is not necessarily monetary . . . , [it] is substantive" in that it "may require an outlay of funds" because VA may in turn resume paying disability compensation for his in-service injuries. *Burkhart v.*

---

not subject to reasonable dispute."). That form contains a section titled "Record of Service," which lists the service member's "Date Entered [Active Duty] This Period" and his or her "Separation Date This Period," DD-214, sec. 12, as well as the "Type of Separation," the "Character of Service," the "Separation Authority," and a "Narrative Reason for Separation," DD-214, secs. 23, 24, 25, 28. That the nature and character of discharge, as well as the reason for separation, are included alongside the service member's dates supports the notion that those characterizations apply to the entire period of service covered by the DD-214.

[9] *See, e.g.*, 38 U.S.C. § 101(18)(B). The Court's decision does not address the situation identified in that statute.

[10] Similarly, a VA regulation provides that, in the case of a conditional discharge followed by a reenlistment, the entire period of service—both before and after reenlistment—constitutes one period of service under certain circumstances, and entitlement to benefits is determined "by the character of the *final* termination of [the] period of active service." 38 C.F.R. § 3.13(b) (2019) (emphasis added); *see Holmes v. Brown*, 10 Vet.App. 38, 41-42 (1997), *overruled on other grounds by D'Amico v. West*, 209 F.3d 1322 (Fed. Cir. 2000); *see also* VA Gen. Coun. Prec. 8-2000 (July 25, 2000).

*Wilkie*, 30 Vet.App. 414, 426 (2019).  "To give [the appellant] such a win based solely on equity would expand the scope of our jurisdiction, and we cannot do that."  *Id.*

### III. CONCLUSION

After consideration of the parties' pleadings and a review of the record, the Board's August 8, 2018, decision is AFFIRMED.